Linda Faye Wilkerson LONG

v.

William Lawrence LONG.

Court of Appeals of Tennessee, Eastern Section.

June 20, 1972.

Certiorari Denied by Supreme Court Nov. 6, 1972.

Merle Johnson, Knoxville, for appellant.

Frank L. Flynn, Jr., Knoxville, for appellee.

OPINION

SANDERS, Judge.

This is an appeal by the mother of two infant children from a decree in the Circuit Court, Division IV, of Knox County removing the custody of the children from her and giving them to the father.

The parties will be referred to as Petitioner, William Lawrence Long, and Respondent, Linda Faye Wilkerson Long, as they appeared in the trial court.

On October 23, 1970, the Court in which this case was heard entered a decree of divorce dissolving the marriage between the parties and awarding exclusive custody of their two minor children to the Respondent with visitation privileges to the Petitioner. It is pertinent to this case to note that in the original divorce proceeding the evidence was heard by the Trial Court on July 13, 1970, but the case was taken under advisement and the final decree was entered October 23, 1970, *nunc pro tunc* July 13, 1970.

Respondent has had custody of the children since the effective date of the divorce decree and was married to her present husband on November 7, 1970.

The children are William Barry Long, six years of age, and Janice Faye Long, five years of age.

Although the original decree permitted the Petitioner to have the custody of the children each weekend from noon Saturday until noon Sunday, since about the middle of November, 1970, the Respondent had permitted the Petitioner and his mother and father, with whom he lives, to have the daughter each weekday from 7:30, a. m., until Respondent got off from work at about 5:00, p. m., and to have the son from about 2:00, p. m., when he got out of school, until she got off from work. In addition to this, Respondent permitted Petitioner to have the children on weekends from Friday until Sunday evening.

On April 19, 1971, Respondent wrote Petitioner a letter informing him that unless he paid her certain moneys which he owed her she was going to take him back to court and as of that weekend she was going to restrict his visitation of the children to the provisions of the decree.

Two days later Petitioner filed the petition involved in this proceeding seeking to have the custody of the children changed from the Respondent to himself. The Petitioner's petition seeking a change in custody is predicated upon alleged misconduct of Respondent with her present husband between the date of the hearing in the divorce proceeding on July 13, 1970, and her marriage on November 7, 1970. He further alleges that from about the middle of September, 1970, to the middle of November, 1970, Respondent permitted their son to remain at home alone afternoons from 2:00, p. m., when he got out of school, until she returned from work about 5:00, p. m. Petitioner further alleges that Respondent's generosity in permitting him to have the custody of the children as much as she has demonstrates "a lack of concern and interest in the children."

The case was tried before The Honorable George S. Child, Jr., Judge of the Circuit Court, Division IV, for Knox County, who, after hearing the evidence, entered an order taking the custody of the children from the Respondent and giving it to the Petitioner and allowing Respondent the same visitation privileges as the Petitioner had under the original decree.

Respondent has appealed to this court and assigned error.

■ The proof shows that the Petitioner had knowledge of all the material facts which he relies upon in his petition prior to the entry of the divorce decree on October 23, 1970. On September 28, 1970, Petitioner hired a detective to investigate the activities of Respondent and the allegations in his petition are based primarily upon information received from the detective.

There was no proof offered by anyone that the Respondent had been guilty of any misconduct prior to her present marriage, other than the indiscretion of dating her present husband between July 13, 1970, and the date of their marriage on November 7, 1970, all of which was readily admitted by the Respondent.

Although the Petitioner complains of the Respondent's conduct of dating her present husband and keeping late hours with him, the Petitioner, by his own admission, was also dating and keeping late hours. His testimony in this regard was as follows:

"Q. Did you see that automobile there at the residence at 7509 Rocky Hill Lane ever at night, late at night?

"A. Yes, sir.

"Q. On how many occasions?

"A. Several. I couldn't say really.

"Q. What hours did you see the automobile there?

"A. Sometimes I would drive by there after I had been on a date, and it was pretty late.

"Q. Could you give us an hour approximately?

"A. 3:00 or 4:00.

"Q. 3:00 or 4:00 a. m.?

"A. Yes, sir."

There is no allegation and no proof to the effect that the Respondent had been guilty of any impropriety since her marriage. Neither was there any allegation that at the time this petition was filed the Respondent was not a good mother or was failing to provide a proper home and proper environment for her children.

On the contrary, the proof shows affirmatively that the Respondent is a good mother; that the children are well cared for; they are well fed, well clothed, clean, well mannered and are devoted to their mother. The record is completely devoid of any proof that the welfare of the children would be best served by removing their custody from the mother and awarding it to their father.

■ It is a well-settled principle of law in this state that where a decree has been entered awarding custody of children, that decree is *res adjudicata* and is conclusive

in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way to make the welfare of the children require a change in custody. Hicks v. Hicks, 26 Tenn.App. 641, 176 S. W.2d 371.

No such showing has been made in this case.

■ Since the Plaintiff had knowledge of all of the material facts, about which he now complains, prior to the entry of the divorce decree, but remained silent while the case was still within the bosom of the Court, he cannot now contend that this constitutes a change in circumstances since the entry of the decree.

Conceding, however, that the conduct of the Respondent in dating her present husband prior to divorce is to be condemned, likewise, we must find that the conduct of the Petitioner, by his own admission, falls within the same category.

In our review of this case we have searched the proof for evidence which might indicate either a disadvantage for the children to remain with their mother or an advantage of their living with their father, and we are unable to find either.

As said by our Supreme Court in the case of Holloway v. Bradley, 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006:

> "The determining facts in these adoption and custody cases are so infinite in their variety that the reported decision in one case is of little aid or assistance in settling the next. The supreme rule to which all others should yield is the welfare and best interest of the child."

In the case of Weaver v. Weaver, 37 Tenn.App. 195, 261 S.W.2d 145, the Court said:

> "A mother, except in extraordinary circumstances, should be with her child of tender years. The courts have repeatedly recognized this as a primary doctrine. 17 Am.Jur. 518; 41 L.R.A.,N.

S., 575, Note, Newburger v. Newburger, 10 Tenn.App. 555.

> "Normally, such a child will not be taken away from its mother unless it is demonstrated that to leave the child with its mother would jeopardize its welfare, both in a physical and in a moral sense. Supra."

The opinion of the Trial Court, which was given orally at the conclusion of the proof, consists of five pages of transcript, but at no time does he mention that, in his opinion, the welfare of the children would be served by changing their custody to the father. On the contrary, the Court appeared to be incensed by the conduct of the Respondent in dating her present husband and desired to punish her. In his opinion the Court said:

> " . . . Then when the decree was put down, it actually was dated back and effective, but that doesn't change the situation that people in this Court are either going to conduct themselves properly as I interpret the law and the cases and society's rules or suffer the consequence.

> "I think from the proof that the people, both of these parents, feel that they are sincerely interested in their children. Now, there is a lot of smoke raised about Mrs. Long's association with Mr. Arden before they actually were married. I say in this regard so that people will know and understand, I don't think that detective proved a thing. He didn't say that a single person was in that house. He puts two cars in front of that house. Now, where Mrs. Long was hurt was when she admitted herself that she and Arden associated, kept late hours and were dating before she was divorced, and I do not find any excuse, and I cannot tolerate that conduct, and I find that misconduct on the part of the custodian of a child before me; therefore, the petition will be granted. The custody that was awarded originally to Mrs. Long will be given Mr. Long, and

the visitation that was given to Mr. Long will be given Mrs. Long. Mr. Long will pay costs."

In custody cases the Court shall not use the custody of the child as a reward or punishment to the parent, but shall be governed by the welfare of the child. Carrere v. Prunty, 257 Iowa 525, 133 N.W.2d 692.

Respondent's assignments of error are sustained. The judgment of the Trial Court is reversed and the original decree entered as of July 13, 1970, is reinstated.

The cost of this appeal is taxed to the Appellee.

COOPER, P. J. (E. S.), and PARROTT, J., concur.