# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### ASSIGNED ON BRIEFS DECEMBER 6, 2001

## JAMES CHARLES MIMS v. PAMELA DANNETTE MIMS

**Direct Appeal from the General Sessions Court for Hardin County**
**No. 4778; The Honorable Daniel L. Smith, Judge**

---

**No. W2001-01688-COA-R3-CV - Filed May 3, 2002**

---

This appeal arises from a trial court's refusal to modify a custody agreement or increase child support obligations. A divorced father of three children petitioned the court to hold the mother in contempt and change the custody agreement embodied in a marital dissolution agreement from joint custody to primary or sole custody of the children by him. The mother counterpetitioned seeking to have the father held in contempt and to have child support increased. The trial court found that no material change in circumstances warranting a change in custody existed and refused to increase the father's child support obligations for lack of proof. For the following reasons, we affirm

**Tenn. r. App. P. 3; appeal as of Right; Judgment of the General Sessions Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Chadwick G. Hunt, Savannah, TN, for Appellant

Ed Neal McDaniel, Savannah, Tn, for Appellee

### OPINION

#### I. Facts and Procedural History

On July 26, 1999, James Charles Mims (Appellant) filed for divorce from Pamela Dannette Mims (Appellee), his wife of sixteen years, in Hardin County General Sessions Court. Appellee filed a counter-claim and had a temporary restraining order issued against Appellant. On October 26, 1999, the judge issued a consent order, which directed both parties to desist from "interfering with the peaceful existence of the other."

Prior to a final decree being entered, the parties executed a marital dissolution agreement. The marital dissolution agreement stated that the parties would retain joint custody over their three

minor children who were age ten, eight, and five at the time. Appellee was given primary custodial duties with Appellant receiving visitation rights. The agreement also set out the basic rights of each parent with regard to the children such as telephone and mail contact, the right to receive school and medical information on the children, and the right to be free of derogatory remarks made against them or their family in the presence of the children. Finally, the agreement required Appellant to pay child support directly to Appellee in the amount of $400.00 per week.

On January 18, 2000, the court entered a final decree of divorce, which incorporated the marital dissolution agreement. The court's final decree, however, did little to subdue the bitterness between the parties, especially with regard to the children.

Approximately one year after the divorce, on January 30, 2001, Appellant filed a petition for contempt and to modify the final decree. With regard to contempt, Appellant alleged that Appellee had been in almost constant violation of the visitation arrangement as set out in the marital dissolution agreement. Appellant further alleged that Appellee had failed to take care of certain financial obligations as previously ordered by the court.

With regard to Appellant's requested modification of the final decree, Appellant alleged that Appellee was acting in bad faith and that a significant and material change in circumstances warranted a change in custody of the children. In support of his claim, Appellant first alleged that Appellee was living with another man and that the police had been called to their residence to quell domestic violence. Appellant also alleged that Appellee frequented bars and sometimes left the children unattended. Further, Appellant alleged that Appellee notified the children's school that Appellant would not be allowed to pick them up and called the police after he did. Finally, Appellant alleged that Appellee failed to adequately feed and clean the children and assist them with homework.

Appellee filed an answer in which she denied Appellant's allegations and counterpetitioned alleging that Appellant was in contempt. Appellee alleged that Appellant failed to provide phone numbers when taking the children out of state, did not apprise her of injuries to the children or let the children call her, failed to execute a quitclaim deed and hold her harmless on IRS debt, and quit taking the children to therapy. Appellee further alleged that the amount of child support Appellant was paying was well below the child support guidelines.

The matter proceeded to trial on April 26, 2001. With regard to child custody, the court, finding that no material change in circumstances had occurred, refused to modify the final decree and entered a permanent parenting plan. Additionally, the court further refused to increase the child support obligations of Appellant. Finally, the court found both Appellant and Appellee in contempt for failing to handle their mutual financial obligations as previously ordered by the court.

Appellant has asked this court to determine whether the trial court erred in refusing to alter the custody agreement and designate Appellant as custodian of the children. Appellee has also raised

an issue for our review. Appellee has asked us to determine whether the court erred in refusing to increase Appellant's child support obligations.

## II. Custody of the Children

Rule 13(d) of the Tennessee Rules of Appellate Procedure governs our review of the trial court's custody and visitation decision. Ruyle v. Ruyle, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); Koch v. Koch, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Rule 13(d) requires this court, in conducting a de novo review of the record, to presume that the trial court's factual findings are correct, unless the evidence in the record preponderates otherwise. TENN. R. APP. P. 13(d).

In applying this standard of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." Koch, 874 S.W.2d at 575. Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves," appellate courts "are reluctant to second-guess a trial court's decisions." Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The courts' paramount concern in a custody case is the welfare and best interest of the parties' minor children. Ruyle, 928 S.W.2d at 441; Koch, 874 S.W.2d at 575. This determination necessarily turns on the particular facts of each case. Koch, 874 S.W.2d at 575.

In child custody cases, the law is well established that when a decree awarding custody of children has been entered, that decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody. Long v. Long, 488 S.W.2d 729 (Tenn. Ct. App.1972). In other words, once the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances. See Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995). The material change of circumstances must be "compelling enough to warrant the dramatic remedy of changed custody" and must "directly affect the welfare of the minor." Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. App. 1991); McReynolds v. McReynolds, No. 01A01-9702-CH-00064, 1997 Tenn. App.LEXIS 678 at *11 (Tenn. Ct. App.Oct. 3, 1997) (quoting Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981)). A material change in circumstances justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App.1996) (citing Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993)).

If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify custody using a best interests standard. Woolsey v. McPherson, No. 02 A01-9706-JV-00125, 1998 Tenn. App. LEXIS 741, *5-6, 1998 WL 760950, at *2 (Tenn. Ct. App. Nov. 2, 1998). Further, as this court has previously recognized, there is a strong presumption in favor of the existing custody arrangement. Smithson v. Etherly, No. 01 A01-9806-CV-00314 1999, Tenn. App. LEXIS 509, at *8 (Tenn. Ct. App. July 29, 1999) (citing Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993)). The party seeking to change the existing custody arrangement has

the burden of proof to show both that the child's circumstances have materially changed in a way that was not reasonably foreseeable at the time of the original custody decision and that changing the existing custody arrangement will serve the child's best interests. Geiger v. Boyle, No. 01 A01-9809-CH-00467, 1999 Tenn. App. LEXIS 466, at *7 (Tenn. Ct. App. July 16, 1999) (citations omitted).

In the case sub judice, Appellant points to many distinct events and series of events that allegedly show that a material change of circumstances exists. First, Appellant asserts that one of the children was allowed to ride in a vehicle with an unlicensed driver and was in a wreck as a result. At trial, the proof indicated that the "unlicensed driver" was actually a family member with a hardship license. Further, the "wreck" resulted from a broken tie-rod on the car, which forced the car into a ditch. We fail to see how this incident rises to the level of a material change in circumstances warranting a change in custody.

Next, Appellant argues that Appellee left the children unsupervised so that she could go to a bar. In support of his assertion, Appellant points to the testimony of two police officers who Appellant had called to the scene.[1] Although the children were alone when the two officers arrived, the officers testified that the children appeared to be in no distress and that Appellee was a good mother. Further, Appellee testified at trial that the children were not left alone, but were left to the care of her nephew. According to Appellee, the nephew left the children alone after her own departure. Based on the proof offered, we find no significant change of circumstances with regard to this allegation.

Appellant also alleges that "mysterious 911 calls" were made reporting a drug overdose at Appellee's home. At trial, however, no proof was offered which indicated that the calls were legitimately made or that there was any cause of alarm. Instead, the officer testifying about this event stated that the report indicated that everything was "okay" when emergency personnel looked into into the situation and that no action was taken.

Appellant's most troubling allegation concerns physical altercations between Appellee and Gary Sigman (Mr. Sigman), her boyfriend, that were witnessed by one of the children. At trial, the eldest child testified that he had witnessed two such altercations between Appellee and Mr. Sigman. The child testified that he had seen Mr. Sigman grab Appellee by the hair and shake his fist at her while yelling. The child further testified that Appellee had called the police on at least one of these occasions. In addition, Appellee testified that on one occasion, Mr. Sigman had attempted to smother her.

In Metz v. Metz, No. W1999-00023-C0A-R3-CV, 2000 Tenn. App. LEXIS 263, at *8 (Tenn. Ct. App. April 25, 2000), this court stated that "[i]n a case involving proven acts of abuse by the custodial parent toward the children, there would undoubtedly be a material change in circumstances warranting a redetermination of custody . . . . [t]o hold otherwise would be to render the requirement of changed circumstances meaningless. . . ." Id. We have also held that continued domestic abuse present in the custodial parent's home, even if not directed at the children, may support a trial court's decision to find a material change of circumstances. See Peters v. Peters, No. 02A01-9810-CH-00283, 1999 Tenn. App. LEXIS 294, at *11 ( Tenn. Ct. App. May 10, 1999). When holding that such abuse supported a trial court's holding that a material change of circumstances had occurred, our reasoning has always been based on the threat to the child's mental or physical welfare. Id.

---

[1] We further note that Appellant testified that he did not call the police out of concern for his children, but rather to gain "documentation" on the unfitness of Appellee.

Turning to the case sub judice, we first note that the record contains no evidence that the children themselves were abused in any way by Mr. Sigman. Further, while describing the events that he witnessed involving Appellee and Mr. Sigman, the eldest child testified that Mr. Sigman did not come to see Appellee "as much as he used to." Although we find this situation with Mr. Sigman troubling, we are hesitant to second-guess the ruling made below. The trial judge was in the best position to weigh the various testimony and conclude whether the welfare of the children was at risk. Because of the trial court's discretion in this matter and the lack of sufficient evidence which would preponderate against the trial court's ruling, we choose not to overturn it.

With regard to Appellant's remaining allegations concerning a material change of circumstances, we hold that they too fail to show that the trial court abused its discretion. Further, reviewing the entire record and all allegations made by Appellant, we fail to find an abuse of discretion. Accordingly, we affirm the trial court's judgment in that no material change of circumstances warranting alteration of the custody agreement exists.

### III. Increase in Child Support Obligations

Turning to the issue raised by Appellee concerning the court's refusal to increase Appellant's child support obligations, we affirm the decision of the trial court. Pursuant to section 35-5-101(a)(1) of the Tennessee Code, "[i]n cases involving child support, upon application of either party, the court shall decree an increase or decrease in such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered . . . ." Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1999) (emphasis added). The child support guidelines define a "significant variance" as being "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1997). The amount established for child support under the guidelines is based on flat percentages of the obligor parent's net income.

Here, Appellee merely points to Appellant's testimony at trial in which he disclosed that his yearly gross income was approximately $93,000. This proof, however, was the only evidence given concerning the need to alter Appellant's obligations. Appellee, however, has failed to offer any proof as to Appellant's current or previous net income, which is needed to determine whether a significant variance exists. Accordingly, we find Appellee's issue to be without merit.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed equally against Appellant, James Charles Mims, and his surety and Appellee, Pamela Dannette Mims, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE