IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 24, 2012 Session

IN THE MATTER OF: CONNOR S.L.

Direct Appeal from the Juvenile Court for Carroll County
No. JC6500-11     Robert W. Newell, Judge

No. W2012-00587-COA-R3-JV - Filed November 8, 2012

In this paternity case, Father appeals the Carroll County Juvenile Court's rulings with regard to custody and parenting time with his minor child. The trial court's ruling as to the paternity of the child is affirmed. However, because the trial court did not comply with Rule 52.01 of the Tennessee Rules of Civil Procedure, we vacate the judgment of the trial court with regard to custody and the parenting schedule and remand for entry of an order with appropriate findings of fact and conclusions of law.

Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part; and Vacated in Part and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and HOLLY M. KIRBY, J., joined.

Carl E. Seely, Jackson, Tennessee, for the appellant, Jason L.L.

J. Neil Thompson, Huntingdon, Tennessee, for the appellee, Amy J.W.

OPINION

I. Background

Appellant Jason L.L. ("Father") and Appellee Amy J. W. ("Mother") have one child, Connor S.L. (d.o.b. 7/31/11) ("Connor" or "the child").[1] Although the parties were never married, Father acknowledged Connor as his child. Mother and Father lived together for a time after the child's birth; however the relationship deteriorated and Mother moved out.

---

[1] In cases involving minor children in juvenile court, it is this Court's policy to redact names sufficient to protect the children's identity.

On September 29, 2011, Father filed a Petition to Approve Parenting Plan in the Carroll County Juvenile Court. Juvenile Court Judge Larry Logan withdrew from the case[2] and Judge Robert Newell of Gibson County was selected to sit by interchange. At the initial hearing on November 3, 2011, Judge Newell ordered the Department of Children's Services ("DCS") to conduct a home study, develop a safety plan, and develop a plan for Father to receive supervised visitation. The Court further ordered the parties to submit to DNA testing to establish paternity. Father subsequently filed a petition to establish paternity. Father later filed a proposed parenting plan in which he sought to be named the primary residential parent of the child.

A hearing was held on January 20, 2012 on all outstanding issues. At the time of trial, both Mother and Father were living with their respective parents. Father testified that he works Monday through Friday from 8:00 am to 5:00 pm and that his commute is approximately forty minutes. Mother testified, in contrast, that she works at the daycare center where the child currently attends, so that she can work and have parenting time with the child simultaneously. Nevertheless, Father asked to be named the primary residential parent and sought parenting time with the child on Sunday through Friday nights. Mother, in contrast, testified that she was the child's primary caregiver from the time of his birth and that Father had not had any unsupervised visits with the child prior to the hearing, even when the parties lived together. Thus, Mother asked to be named the primary residential parent of the child. Testimony on behalf of Father admitted that neither Father nor his family had any unsupervised visitation with the child since Mother and Father parted, but alleged that the restriction was based on Mother's contention that the child should not be away from her while she was still breastfeeding. However, Mother's father, Guy W., testified that his wife has taken care of the child when he was ill, while Mother was at work. Mother further testified that Father had not paid any child support since the child's birth. Instead of receiving support from Father, Mr. W. testified that he and his wife provide support for the child. Mr. W. further admitted that his family never sought any financial support from Father prior to these proceedings.

At the conclusion of the hearing, the trial court orally ruled that Father was the biological parent of the child,[3] named Mother primary residential parent and awarded Father every other weekend visitation. The trial court further set Father's child support based on his income and ordered that he pay retroactive child support as of the time that the parties

[2]According to the testimony at the later hearing in this cause and the briefs in this case, Judge Logan withdrew due to his professional and/or personal relationship with Mother's father, Guy W., who is the District Public Defender for the 24th Judicial District, which includes Carroll County.

[3] Neither party takes issue with this ruling on appeal.

separated. A written order memorializing the trial court's oral ruling was entered on February 24, 2012. The order included a permanent parenting plan.[4]

## II. Issues Presented
Father appeals, raising the following issues, which are taken from his brief:

1.    Whether the trial court's ruling as to custody is contrary to the preponderance of the evidence?
2.    Whether the trial court failed to properly consider the statutory factors mandated by Tennessee Code Annotated Section 36-6-106(a) to achieve the maximum participation possible for each parent in the child's life?
3.    Whether the trial court's ruling is in the best interest of the child or supported by the preponderance of the evidence?


## III. Analysis

As a preliminary matter, we will first discuss Mother's contention that Father was required to prove a material change in circumstances in order to seek custody of the child. It is well settled that "where *a decree has been entered* awarding custody of children, that decree is [r]es []judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way to make the welfare of the children require a change in custody." *Long v. Long*, 488 S.W.2d 729 (Tenn. Ct. App. 1972) (emphasis added); *see also Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952)); *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Tennessee Code Annotated Section 36-6-101(a)(2)(C) discusses the requirement of a material change in circumstances in detail, stating:

> If the issue before the court is a *modification of the court's prior decree* pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material

---

[4] Parenting plans are not required in juvenile court. However, "[t]he juvenile court may incorporate any part of the parenting plan process in any matter that the court deems appropriate." Tenn. Code Ann. § 36-6-41.

change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

(emphasis added). Accordingly, a parent is only required to prove a material change in circumstances when the issue is modification of a prior court order establishing custody or a parenting schedule. From our review of the record, the trial court's February 24, 2012 order is the first order that establishes paternity, names a primary residential parent, or sets a parenting schedule with regard to this child. Because there was no prior order to modify, Father was not required to prove a material change in circumstances.

Mother argues, however, that custody of the child was vested with her by operation of Tennessee Code Annotated Section 36-2-203, which provides that: "Absent an order of custody to the contrary, custody of a child born out of wedlock is with the mother." Thus, she argues, that despite the absence of a prior court order naming her as the primary residential parent of the child, she was designated as the primary custodian by operation of law. Mother cites this Court's opinion in *In re B.A.L.*, No. W2004-00826-COA-R3-JV, 2004 WL 3008810 (Tenn. Ct. App. Dec. 23, 2004), which, she argues, is analogous to the case at bar. In *In re B.A.L.* the father argued that the trial court erred in requiring him to prove a material change in circumstances to change custody, alleging that no initial order establishing custody had been entered by the trial court. *Id.* at *4. The Court of Appeals disagreed, noting that a prior order in May of 1996 established the father's paternity and provided that "custody of said child[ren] be awarded to the mother." *Id.* at *1. Accordingly, this Court concluded that the issue was indeed modification of a prior order and that the trial court did not err in requiring the father to prove a material change in circumstances. The Court went on to hold, in dicta, however, that:

[E]ven absent this [prior] Order, T.C.A. § 36-2-303 (2001) indicates that "[a]bsent an order of custody to the contrary, custody of a child born out of wedlock is with the mother." Consequently, custody would have been with the [m]other from the respective birthdays of these children regardless of a court order.

-4-

*Id.* at \*4. The Court then noted that the father failed to raise the issue of custody with the Court until his petition to modify custody in 2003, approximately seven years after the initial order established custody in that case. The Court thus concluded that the father had waived any issue concerning the trial court's decision to award custody to the mother and later require a material change in circumstances. *Id.* Accordingly, despite Mother's contention in this case, the Court's ruling in *In re B.A.L.* was based on the fact that the trial court had entered an ordering establishing the mother as the primary custodian of the children and Father's waiver of the issue, rather than on a holding that application of Tennessee Code Annotated Section 36-2-203 constitutes a court order sufficient to trigger the requirement to show a material change in circumstances.

In this case, there can be little doubt that Father raised the issue of custody within an appropriate time. According to the record, the child was born in July 2011 and the parties lived to together for approximately six weeks after the child's birth. Soon after the parties parted, in September 2011, Father filed a petition to set a parenting plan. In addition, Father submitted a proposed parenting plan asking to be named the primary residential custodian of the child in January 2012. Therefore, we cannot conclude that Father waived the issue of custody. Mother's contention that he was required to prove a material change in circumstances is, consequently, without merit.

Father next argues that the trial court erred in its custody and visitation decisions. After reviewing the record in this case, however, we conclude that the trial court's failure to make specific findings of fact and conclusions of law necessitates remand to the trial court for the entry of an order that complies with Rule 52.01 of the Tennessee Rules of Civil Procedure.

This case was initiated by Father in the Carroll County Juvenile Court in order to determine issues of paternity, custody, and a parenting schedule. Rule 1(b) of the Rules of Juvenile Court provides that:

> The Tennessee Rules of Civil Procedure shall govern all cases involving the termination of parental rights, paternity cases, guardianship and mental health commitment cases involving children, and child custody proceedings under T.C.A. §§ 36-6-101, et seq., 36-6-201, et seq., and 37-1-104(a)(2) and (f)
> . . . .

Because paternity and custody are clearly at issue in this case, the Rules of Civil Procedure govern the proceedings in the Juvenile Court.

Rule 52.01 of the Tennessee Rules of Civil Procedure provides that:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See* *Poole v. Union Planters Bank N.A.*, No. W2009–01507–COA–R3–CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id*.

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). In fact, findings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations "often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings." *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010) (citing *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Indeed, appellate courts "are reluctant to second-guess a trial court's decisions" with regard to these matters and "will not interfere except upon a showing of erroneous exercise of that discretion." *Hyde*, 2010 WL 4024905, at *3 (citing *Johnson*, 169 S.W.3d at 645). However, without findings of fact, "this [C]ourt is left to wonder on what basis the court reached its ultimate decision," *In re K.H.*, 2009 WL 1362314, at *8, and we are unable to afford appropriate deference to the trial court's decision. *See* *Forrest Construction Co., L.L.C. v. Laughlin*, 337 S.W.3d 211, 220 (Tenn. App. Ct. 2009) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)) ("[I]f the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness.") .

In this case, the trial court entered an order and permanent parenting plan awarding Mother 261 days with the child, or 71.5% of the year, and awarding Father 104 days, or

28.5% of the year. However, the trial court failed to offer appropriate findings of fact to support its decision. Indeed, the trial court's order in this case states, in its entirety, that:

> This cause came on to be heard on this the 20th day of January, 2012, before the Honorable Robert Newell, special Judge presiding over the Juvenile Court of Carroll County, at Huntingdon, Tennessee, upon the Petition filed in this matter, testimony elicited from witnesses, and statements of counsel for the parties, from all of which the Court finds as follows:
>
> 1. That [Father], is the biological father of the minor child, Connor [], and shall therefore, be named the biological/legal father of the minor child, Connor [], and shall be vested with all rights, obligations, and duties of a natural and legal parent of a minor child, and the minor child, Connor [], shall be vested with all rights of those as a child born in lawful wedlock.
> 2. That the Court made a detailed ruling on custody and the residential schedule, which has been reduced to a Permanent Parenting Plan that is attached hereto and shall be incorporated herein by reference as if copied verbatim herein.
> 3. That each party shall be responsible for his/her own attorneys' fees, if any, incurred in this cause.
> 4. That each party shall be responsible for the court costs he/she has incurred to date. There are no outstanding court costs noted.
> 5. Each party will pay 1/2 the expenses associated with the DNA test to determine parentage of the minor child. No outstanding balance is noted.
> 6. The Tennessee Department of Children's Services is relieved from providing services in this case.
> 7. That the parties are aware that this is an order of the Court and that failure to comply without just cause, places them in contempt of Court and subjects them to such actions the Court deems proper within its jurisdiction.
>
> All of the above is therefore ORDERED and ADJUDGED.

With regard to the trial court's "detailed ruling on custody and the residential schedule," the trial court did enter a permanent parenting plan specifically detailing the parties' obligations with regard to visitation and other matters. However, nothing in the order or the parenting plan provides the basis for the trial court's decision as required by Rule 52.01.

Instead, the trial court, after hearing the evidence, made an oral ruling, which was not specifically incorporated by reference in its order in this case. It is well settled that a court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). In *Cunningham v. Cunningham*, No. W2006–02685–COA–R3–CV, 2008 WL 2521425 (Tenn. Ct. App. June 25, 2008), this Court explained:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Cunningham*, 2008 WL 2521425, at *5 (citing *Broadway Motor Co ., Inc. v. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (1930)). Consequently, "[w]e do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks." *Id*.

Even if we were to consider the trial court's oral ruling, the ruling contained very few factual findings in support of the trial court's decision and many of those findings weigh equally in favor of Mother and Father. In its oral ruling, the trial court stated:

> The Court can only rely on the Department of Children Services and their home study and their recommendation as to both parents being suitable parents to be able to work with the child and have visitation either primary or alternate parent.
> The only one issue that I think the parties have to work out will be the breastfeeding but, of course, the courts can't use that as a means of restricting visitation. . . .

* * *

-8-

Both parents participate in a child's life is a lot better than only one or one partially. I'm not a big proponent of equal visitation, you know. They tried to make that a statute a few years ago. It was a big deal in the Legislature, but they never did pass that particular statute. They went back and left it open to the judges to be able to consider whether it will be equal time or not. In looking at the factors in this, I'm not too sure that what I do will be equal sharing time. But, you know, the child is old enough and, at least, we've had supervised visitation for a period of time for the child to be able to get to know the father.

Also, both parties have good support. . . .

\* \* \*

Looking at everything and—You know, I've been doing this a long time and the biggest problem with children born out of wedlock or paternity cases is that there's always that barrier between the two parents that it's hard for them to get along. It's hard for them to— And I always require you to at least participate and communicate and work together for the best interest of the child. You don't have to like each other. And most juvenile judges will look at the fact of requiring you to communicate. And in Tennessee, it is required that both parents participate in the child's life.

Also, the educational—Now, most school systems in Tennessee will not let the alternate parent pick up the child. Only the primary residential parent will be able to pick up the child. That doesn't mean that both parents can't attend the meetings and participate in the school of the child and should have the ability to get reports, but don't get into the fact that— Because I don't know of any school system that's going to let both parents— . . . . So the primary parent will be the one that will pick up the child from school or someone designated by them.[5]

---

[5] If this problem does, in fact, arise, it appears that an appropriate and simple remedy would be for the primary resident parent to designate the alternative residential parent as a person who is authorized to

(continued...)

> I feel like that both parents are capable of taking care of the child. At this time, considering the primary caregiver and alternate caregiver, the Court has listened to the facts and the evidence. The Court is going to order that the mother be the primary caregiver and the father will be the alternate caregiver.

From our review of the oral findings, the trial court found that both Mother and Father have suitable homes, would make fit parents, have good support, and are capable of taking care of the child. The only finding that may reasonably be construed in favor of Mother is the trial court's finding that Father has only had supervised visitation with the child. However, the court does not make a finding as to the cause of the supervision, specifically whether the visits were supervised solely at Mother's discretion as argued by Father. In addition, the trial court notes that the child, who was less than a year old at the time of the hearing, was able to get to know Father through the visits.

Mother points to several facts, which she argues support the trial court's decision, including the fact that she has been the child's primary caregiver throughout his life and Father's failure to pay meaningful support. While we agree that these facts, if found, would weigh in favor of Mother, these are not the only factors that the trial court is directed to consider. Indeed, there is no indication from the trial court's oral findings, written order, or parenting plan that the trial court relied on, or even considered, these factors or any other factor as outlined in Tennessee Code Sections 36-6-106 or -404 in making its decision. *See* Tenn. Code Ann. § 36-6-106(a)(3) (setting forth various factors the trial court must consider in making an initial custody decision, including "[t]he disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver" and "[t]he importance of continuity in the child's life"); Tenn. Code Ann. § 36-6-404(b) (setting forth various factors the trial court must consider in fashioning a parenting schedule, including "[t]he character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child" and "the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment"). This Court has previously held that while "there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," the statute nevertheless "requires the trial court to consider

---

[5](...continued)
pick the child up from school.

all the applicable factors."[6] ***Murray v. Murray***, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010). Moreover, this Court has encouraged trial courts to "be as precise as possible in making child custody findings" in order to facilitate meaningful appellate review. ***In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011).

In this case, the trial court failed to make any findings that justify its decision. As previously discussed, without sufficient findings of fact and conclusions of law "this court is left to wonder on what basis the court reached its ultimate decision." ***In re K.H.***, 2009 WL 1362314, at *8 (quoting ***In re M.E.W.***, 2004 WL 865840, at *19). This Court has previously held that "[a]ppellate review . . . is not possible in the absence of specific findings of fact and conclusions of law by the trial court." ***Lake v. Haynes***, No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at *5 (Tenn. Ct. App. June 9, 2011). Without any factual findings in this particular case, this Court is unable to determine the basis for the trial court's decision and what factors, if any, the trial court considered in naming Mother the primary residential parent and fashioning the parenting schedule. This Court has previously held that if the trial court fails to make sufficient findings of fact and conclusions of law, the appropriate remedy is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." ***Lake v. Haynes***, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). Based on the foregoing, we vacate the judgment of the trial court with regard to custody and the parenting schedule of the child, and remand to the trial court for entry of an order containing appropriate findings of fact and conclusions of law. However, because neither party takes issue with the trial court's ruling regarding the paternity of the child, we affirm the trial court's ruling as to this issue.

## IV. Conclusion

The Judgment of the Carroll County Juvenile Court is affirmed in part and vacated in part and this cause is remanded to the trial court for further proceedings in accordance with this opinion. Costs of this appeal are taxed one-half to Appellant Joshua L. L., and his surety, and one-half to Appellee Amy J. W., for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[6] This Court has previously expressed concern that the case law holding that trial judges need not articulate the factors pursuant to Tennessee Code Annotated Section 36-6-106(a) appears to conflict with the intent of Tennessee Rule of Civil Procedure 52.01. *See **In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 n.13 (Tenn. Ct. App. Oct. 25, 2011).