# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 9, 2010 Session

## GINA SCARLETT FERRARI PACE v. WARD REDDEN PACE

**Direct Appeal from the Circuit Court for Davidson County**
**No. 03D-499      Amanda Jane McClendon, Judge**

---

**No. M2009-01037-COA-R3-CV - Filed April 26, 2010**

---

This is a post-divorce modification of child custody and support. Father/Appellant appeals the trial court's order, which increased his child support obligation, modified his parenting time, and ordered him to pay Mother/Appellee's attorney's fees. Finding that the trial court erred in eliminating Father's one-week of uninterrupted summer visitation and not allowing him an additional night per week visitation, we reverse that portion of the order. Further, we find that the trial court erred in providing Father with a "credit" towards his child support in exchange for his payment of Mother's mortgage. Accordingly, we vacate the trial court's amount of child support ordered, as well as the trial court's award of attorney's fees to Mother. We affirm the trial court's findings on both Mother's and Father's income. Affirmed in part; reversed in part; vacated in part and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Vacated in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Sarah S. Richter, Nashville, Tennessee, for the appellant, Ward Redden Pace.

D. Scott Parsley, Michael K. Parsley, Nashville, Tennessee, for the appellee, Gina Scarlett Ferrari Pace.

## OPINION

On June 4, 2003, Appellant Ward Redden Pace ("Mr. Pace") and Appellee Gina Scarlett Ferrari Pace ("Ms. Pace") were divorced by final decree of the Circuit Court at

1

Davidson County. One minor child had been born to the marriage on August 29, 2002. The final decree incorporated a Marital Dissolution Agreement ("MDA") and Permanent Parenting Plan. The parenting plan designated Ms. Pace as the primary residential custodian, and provided Mr. Pace with parenting time every other week from Friday at 6:00 p.m. until Sunday at 6:00 p.m. In addition, the parties agreed to split Christmas and Thanksgiving breaks, and Mr. Pace was provided with one week of uninterrupted summer visitation. Although a child support worksheet was not attached to the parenting plan, paragraph 3.1 of the plan provided that Mr. Pace would pay child support in the amount of $1,000.00 per month. Paragraph 3.1 specifically states that "[t]his payment conforms with the Tennessee Child Support Guidelines based upon father's average yearly income."

In relevant part, the MDA provided:

> Wife currently owns an equity in real property located at 724 Branch Creek Road, Nashville...upon which there is a current mortgage encumbrance of approximately...$94,710.00. In consideration of wife deeding to husband her equity in property at 2915 Woodland [sic] Drive, Nashville...husband agrees to immediately pay the total mortgage debt against the 724 Branch Creek Road, Nashville...property so that wife shall own said property free and clear of any encumbrances. Wife shall continue to own the 724 Branch Creek Road property free and clear from any claim of any nature whatsoever by husband. Husband shall pay the Branch Creek Road mortgage debt in full within thirty (30) days from the date that wife deeds her equity in the 2915 Woodlawn Drive property to husband, as set out above.

Pursuant to the MDA, Mr. Pace paid approximately $95,000.00 towards the Branch Creek Road mortgage. The parenting plan acknowledges this payment at Paragraph 3.1, which section is titled "Other Provisions for Financial Support," and reads as follows:

> The father paid the mortgage balance of approximately $95,000.00 on mother's 724 Branch Creek home occupied by mother and child. The parties agree that in the event that either party should request an adjustment to father's obligation to pay child support as provided herein, that the parties shall request that the father be given consideration and credited for the $1,000.00 per month debt obligation that he has assumed and paid so that wife and child's home shall be free from

2

encumbrance. Husband's action to pay the existing debt obligation, plus the child support provisions set out above, constitute an upward deviation from the current Tennessee Child Support Guidelines.

Following the divorce, the parties relationship was amicable, and they admittedly did not adhere to the parenting time as set out above. Instead, Mr. Pace contends that he enjoyed more overnight parenting time than was provided under the plan. According to the calendar maintained by Mr. Pace, he exercised approximately eight or nine overnight visits per month as opposed to the four overnights awarded under the parenting plan. Ms. Pace admits that they deviated from the plan, but disputes Mr. Pace's allegation that he exercised *more* parenting time with the minor child than was originally granted under the plan.

On September 9, 2008, Ms. Pace filed a petition to modify and increase child support, seeking to increase Mr. Pace's monthly child support obligation. Concurrent with the filing of this petition, Ms. Pace began to strictly adhere to the visitation schedule outlined in the parenting plan. On September 30, 2008, Mr. Pace filed an answer denying the material allegations of Ms. Pace's petition, and specifically averring that there was neither a fifteen percent variance in his child support obligation, nor any material and substantial change in circumstances so as to warrant modification of the original parenting plan. Concurrent with his answer, Mr. Pace filed a counter-petition, seeking to modify parenting time so that the parties would share equal time with the minor child.

The cross-petitions were heard by the trial court on January 9, 2009. The court entered its original order on February 10, 2009. In relevant part, the February 10, 2009 Order states that "the Court is of the opinion that it is in the minor child's best interests that the one week of extended summer visitation be removed but otherwise the visitation/co-parenting time shall continue as ordered in 2003...." The trial court found that Ms. Pace had the ability to earn $2,305.34 per month, and that Mr. Pace earned $20,189.00 per month. In addition, this order increases Mr. Pace's child support obligation. Finally, the February 10, 2009 order provides that the attorneys for the parties should "determine the exact amount of the mortgage paid by [Mr. Pace], and calculate forward to the date of the filing of [Ms. Pace's] petition the balance of the credit. The Court shall allow [Mr. Pace] a credit of $100.00 a month upon his gross child support obligation."

After the parties arrived at these figures, on March 11, 2009 the court entered an order, amending the February 10, 2009 Order.[1] In the March 11, 2009 order, the trial court

---

[1]Two orders appear in the record attempting to amend the February 10, 2009 Order. One was entered on March 3, 2009, and the other on March 11, 2009. The orders are substantively

declined to deduct a $1,000.00 "credit" from Mr. Pace's child support obligation, and found that the credit was neither a prospective modification nor retrospective modification of child support, but was instead a credit for the entire amount of the mortgage paid by Mr. Pace. In regard to the credit, the trial court found that it shall run out when the entire amount of the mortgage paid is credited to Mr. Pace, and that he had been receiving the credit since he began paying child support in 2003. Using the numbers provided by the attorneys, the trial court held that Mr. Pace was still entitled to $29,710.00 in credit. Further, the trial court stated in the March 11, 2009 order that it found it could modify the credit, and ordered that Mr. Pace's credit be reduced to $100.00 per month. Finally, in the March 11, 2009 Order the trial court found Mr. Pace's child support obligation to be $1,904.00 per month, resulting in a total amount owed of $1,804.00 per month, and found that based upon these amounts, Mr. Pace had an arrearage of $4,020.00.

In addition to the foregoing, the court awarded Ms. Pace a judgment for attorney's fees in the amount of $4,400.00 against Mr. Pace. On March 11, 2009, Mr. Pace filed a motion to alter or amend the judgment, which motion was denied by Order of May 4, 2009. Mr. Pace appeals from the trial court's denial of his motion to alter or amend, and raises three issues for review as stated in his brief:

> I. Whether the trial court erred in failing to increase Mr. Pace's parenting time under the original Parenting Plan?
>
> II. Whether the trial court erred in modifying Mr. Pace's child support obligation?
>
> III. Whether the trial court erred in ordering Mr. Pace to pay Ms. Pace's attorney's fees and failing to award Mr. Pace his attorney's fees?

**Standard of Review**

As stated in his brief, Mr. Pace appeals from the trial court's denial of his motion to alter or amend. Therefore, we will proceed with our review only under than standard of review applicable to motions to alter or amend. We review a trial court's ruling on a motion

---

identical; the only difference being that the March 11, 2009 Order contains an explanation of why the trial court entered an order on February 26, 2009, and subsequently set that order aside on February 26, 2009. Seeing no difference in the orders which would affect the outcome of our decision, and finding no explanation as to why two orders were entered, we will review the latter order, the March 11, 2009 Order, for this opinion.

to alter or amend a judgment under Tennessee Rule of Civil Procedure 59.04 only for an abuse of discretion *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Linkous v. Lane,* 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008). A trial court abuses its discretion only when it has "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003).

## Modification of Parenting Time

On appeal, Mr. Pace asserts that the trial court erred in failing to award him equal parenting time with the minor child and in removing his one-week of uninterrupted summer visitation. It is well settled that "[a] custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made[.]" *Scofield*, 2007 WL 624351, at *3 (citing *Young v. Smith*, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952)); *Steen*, 61 S.W.3d at 327; *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); *Long v. Long*, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Id*. (citing Tenn. Code Ann. § 36-6-101(a)(1)); *see also Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. *See Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug.5, 2008) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). "[N]ot all changes in the circumstances of the parties and the child warrant a change in custody." *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." *Id*. (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered, and (3) the change is one that affects the child's well-being in a meaningful way." *Id*. at *4 (citing *Kendrick*, 90 S.W.3d at 570); *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002); *Cranston*, 106 S.W.3d at 644. "Custody decisions are not intended and should not be designed to reward parents for prior virtuous conduct, nor to punish them for their human frailties or past missteps." *Id*. (citing *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006)).

If the petitioner makes a prima facie case of a material change in circumstances, then the court must determine whether a change in custody or visitation is in the best interest of the child. *In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth at Tenn. Code Ann. § 36-6-106 to make an initial custody determination, and those set forth at Tenn. Code Ann. § 36-6-404 to fashion a residential schedule. *Id.*

At the hearing, and on appeal, Mr. Pace asserts that he should have equal parenting time based upon material changes in circumstances, including: (1) Ms. Pace's deviation from the original parenting plan, (2) Ms. Pace's admitted drug use, (3)Ms. Pace's allowing the child to sleep in her bed, and (4) the child's age. We will address each of these four grounds with the evidence contained in the record. However, we first note that, in its order, the trial court did not state specifically whether it had found a material change in circumstances, but instead made the following, specific findings concerning grounds for modification of parenting time:

> Obviously the parties should not use illicit drugs. Although there was no testimony that the usage of marijuana had harmed the minor child it is illegal and its usage cannot be tolerated. Both parties should continue to refrain from illicit drug usage.

> It is obvious that the Ex-husband went approximately 5 months in 2007 while in rehab without visiting the child as agreed and Ordered. Otherwise, both parties had a lack of ability to correctly recite visitation actually exercised. However, the Court did deduce from the testimony offered that the one week of extended, uninterrupted visitation by Ex-Husband had not occurred. Otherwise the Court cannot accurately determine that visitation[,] since [the time of] Ex-Husband's stint in rehab[,] has not been exercised.

> Ex-Wife admitted to having the minor child sleep with her, and the Ex-Husband admitted to the same actions until the past year. It appears to the Court that in the past both parties probably had the minor child sleep with them because of their concerns for his health and heart issues. Both parties testified that they were breaking the child of the habit, the Ex-Husband having made better progress than Ex-Wife. While the child's

6

health continues to be good, Ex-Wife should continue in her efforts and have the child sleep separately from her as the Ex-Husband has already accomplished.

Based upon the foregoing the Court is of the opinion that it is in the minor child's best interests that the one week of extended summer visitation be removed but otherwise the visitation/coparenting time shall continue as ordered in 2003 and should the Ex-Husband fail to exercise visitation as agreed and ordered then this shall result in a change in the parties child support obligation.

<u>Failure to adhere to the parenting plan</u>

Mr. Pace argues that, because Ms. Pace allowed deviation from the parenting plan to include more parenting time for Mr. Pace, this fact constitutes a material change in circumstance so as to support a modification of the original parenting plan. We disagree in this instance. Although we concede that failure to adhere to a parenting plan or order of custody **may** constitute a material change in circumstances, Tenn. Code Ann. §36-6-101(a)(2)(C); ***Ateca v. Ateca***, No. M2007-02843-COA-R3-CV, 2009 WL 1138129, at *1-2 (Tenn. Ct. App. April 27, 2009), deviation from the court order does not, *ipso facto*, support a finding of a material change in circumstance.

In this case, the parenting plan provided Mr. Pace parenting time with the minor child every other weekend as well as one week of summer visitation and standard holiday visitation. It is undisputed in the record that, following entry of the parenting plan, the parties deviated from that plan, but the parties dispute how much visitation Mr. Pace actually exercised. However, the parties do not dispute that Mr. Pace was allowed one extra overnight per week. The trial court found that the parties had deviated from the parenting schedule, and that both parties were credible, but that neither party could remember the exact visitation that had occurred.

We have reviewed the record and the exact amount of visitation time exercised by Mr. Pace is not clear. Although neither party kept complete records of actual visitation, it appears from the calendar kept sporadically by Mr. Pace that he may have exercised up to nine overnights a month, as opposed to the four nights awarded. It appears that the extra parenting time was amenable to both parties as well as to the child. In the case at bar, not only is there insufficient evidence from which to determine the actual visitation exercised by

7

the parties, but there is also insufficient evidence from which to conclude that the deviation either worked such a benefit, or a detriment, to the child as to justify modification of the schedule.

Drug use

Mr. Pace argues that Ms. Pace's admitted drug use constitutes a material change in circumstance so as to support a modification of the visitation schedule. During their respective testimonies, both parties admitted to having used marijuana in the past. Mr. Pace testified that he used marijuana approximately two and a half years ago. Ms. Pace testified that she had used marijuana on New Year's Eve, which was two weeks prior to the trial. However, there is no evidence of any other present drug use by the parties. More importantly, the record does not contain any evidence as to the location of the child during each party's respective drug use, or any effect the drug use had on the child. If the record had contained evidence of a harmful effect Mother's drug use had on the child, or that either party's drug use was an ongoing issue, our findings may have differed. While we agree with the trial court that both parties should refrain from using any illegal drugs, we cannot go so far as to say that each party's respective allegation of drug use by the other, without more evidence, supports a finding of a material change in circumstances so as to justify modification of the parenting plan.

Child's age and sleeping arrangements

At the time of the hearing, the minor child was six years old. At the hearing, and in his appellate brief, Mr. Pace argues that, because this male child is growing up, he is in need of more paternal involvement. Because aging is a natural occurrence, we cannot go so far as to say that the mere fact of chronological advancement constitutes a material change in circumstances. "The salient consideration is not the change of age alone; it is the age-related changes in the [child's] needs." *Boyer v. Heimermann*, 238 S.W. 249, 258-59 (Tenn. Ct. App. 2007). In order to support this argument, there would need to be evidence (other than age alone) to indicate that one parent's influence is more necessary than the other's. *Id.* (finding a material change of circumstances after testimony from the teenage children, and proof that the children desired to get jobs, spend time with friends and be involved in extracurricular activities, and could not do so while residing at the father's house for extended periods of time during the summers). No such proof is contained in this appellate record.

Concerning the child's sleeping arrangements, the record indicates that, because the child underwent numerous heart surgeries at a very young age, these parents allowed the child to sleep in the marital bed so that they could better monitor him during the night.

8

Apparently, this "habit" continued after the parties' separated.  Mr. Pace testified that, after working with the child, the child is able to sleep in his own room at Mr. Pace's home.  However, the record indicates that Ms. Pace has not made this transition, and still allows the child to share her bed.  While there is no indication in the record that anything untoward is occurring, we agree with the trial court that Ms. Pace should work toward the child sleeping in his own bed.  That being said, there is no proof in record that the sleeping arrangements have created any problems for the child so as to constitute a material change in circumstances.

On the issue of modification of the parenting plan, we conclude that there is insufficient evidence to support a finding of a material change in circumstances.  Concerning Mr. Pace's one-week of summer visitation, it appears from our review of the record that the trial court's decision to eliminate this parenting time was made *sua sponte* as neither party requested that Mr. Pace's parenting time be reduced.  Because there was no finding of a material change in circumstances nor evidence in the record to support such finding, the trial court abused its discretion in modifying Mr. Pace's parenting time.  Consequently, we reverse the trial court's order to the extent that it removes Mr. Pace's one-week of uninterrupted summer vacation.

Further, we find that the trial court abused its discretion in not granting Mr. Pace one overnight visit per week with the child.  At trial, both parties testified that Mr. Pace had been exercising one additional overnight visit during the week.  Moreover, Ms. Pace agreed that Mr. Pace should continue to have a midweek overnight visit, provided that it was not at Mr. Pace's "whim."  In visitation cases, the paramount consideration is the welfare of the child.  *Suttles,* 748 S.W.2d at 429.  However, this state has a clear public policy "that the non-custodial parent be awarded visitation reasonably sufficient to maintain the parent-child relationship." *In the Matter of Z.A.W.*, No. W2005-01956-COA-R3-JV, 2006 WL 1627180 at *4 (Tenn. Ct. App. 2006)(citing *Burlew v. Burlew*, No. W2005-00526-COA-R3-CV, 2006 WL 26361 at *4-5 (Tenn. Ct. App. 2006)); *In re S.C.H.* No. M2003-01382-COA-R3-CV, 2004 WL 2941151, at *4-5 (Tenn. Ct. App. 2004)(citing *Suttles*, 478 S.W.2d at 429.)); see also Tenn. Code Ann. § 36-6-301 (2009).  Accordingly, "the least restrictive visitation limits are favored in order to encourage the parent-child relationship." *Id.* (citing *Eldridge*, 42 S.W.3d at 85). Upon agreement by both parents that Mr. Pace should have one additional night per week with the child, and absent any showing that additional visitation would not be in the child's best interest, the trial court should have modified the parenting plan to provide for such.  Failure to do so was an abuse of discretion.

Consequently, we vacate the trial court's modification of the parenting plan as it pertains to visitation.  On remand, the trial court shall reinstate Mr. Pace's one week summer visitation and provide for one additional overnight visit during the week.

9

## Child Support

Setting child support is a discretionary matter. ***State ex rel. Vaughn v. Kaatrude***, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Courts are required to use child support guidelines developed by the Tennessee Department of Human Services "to promote both efficient child support proceedings and dependable, consistent child support awards." ***Id***. at 249; *see also* Tenn.Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. § 1240-2-4-.01(3)(b), (c). Even with the adoption of the 2005 child support guidelines based upon the income shares model, trial courts retain a certain amount of discretion in their decisions regarding child support.

On appeal, Mr. Pace asserts that the trial court erred in increasing his monthly child support obligation from $1,000.00 per month to $1,804.00, which amount included a "[d]ownward deviation for mortgage credit...at the rate of $100.00 per month" for the payments Mr. Pace had made toward Ms. Pace's mortgage obligation on the child's home. Specifically, Mr. Pace asserts that the trial court erred: (1) in not correctly imputing income to Ms. Pace, (2) in not granting Mr. Pace the full $1,000 credit as contemplated in the original parenting plan, and (3) in relying only upon Mr. Pace's 2007 tax return in setting his income for purposes of child support. We will address each of these issues in turn.

### Imputation of income to Ms. Pace

The Guidelines state that imputing additional gross income to a parent is appropriate if it is determined that he or she is "willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(i)(I). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." ***Massey v. Casals***, No. W2008-01807-COA-R3-JV, 2009 WL 4017256, at *6 (Tenn. Ct. App. Nov. 23, 2009). Therefore, a trial court may deny a petition for modification of child support if the significant variance is the result of willful or voluntary underemployment. ***Wine***, 245 S.W.3d at 394. "The burden of proving that a significant variance is the result of willful or voluntary underemployment is on the party opposing the modification." ***Id***. (citing ***Demers v. Demers***, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003)) "The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii). "The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." ***Id***.

"A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii)(I) (emphasis added). However, "[i]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at *4, n. 7 (Tenn. Ct. App. July 31, 2008). Although it is not required that parents intend to avoid their child support obligations by their actions, "willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). The child support guidelines provide the trial court with several factors it may consider in making this determination.[2] "'Determining whether a parent is willfully and voluntarily underemployed

---

[2]Factors that may be considered when determining whether a parent is voluntarily underemployed include:

> (I) The parent's past and present employment;
> (II) The parent's education, training, and ability to work;
> (III) The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life. In considering whether there should be any imputation of income to a stay-at-home parent, the tribunal shall consider:
>
> > I. Whether the parent acted in the role of full-time caretaker while the parents were living in the same household;
> > II. The length of time the parent staying at home has remained out of the workforce for this purpose; and
> > III. The age of the minor children.
>
> (IV) A parent's extravagant lifestyle, including ownership of valuable assets and resources (such as an expensive home or automobile), that appears inappropriate or unreasonable for the income claimed by the parent;
> (V) The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future;
> (VI) Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of

11

and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances.'" ***Reed v. Steadham***, No. E2009-00018-COA-R3-CV, 2009 WL 3295123, at *2 (Tenn. Ct. App. Oct. 14, 2009) (quoting ***Owensby***, 2008 WL 3069777, at *4). The trial court has considerable discretion in its determination of whether a parent is willfully or voluntarily underemployed. ***Hommerding v. Hommerding***, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *7 (Tenn. Ct. App. June 15, 2009) (citing ***Eldridge v. Eldridge***, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002)); *see also **Willis v. Willis***, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). A trial court's determination regarding willful and voluntary underemployment is entitled to a presumption of correctness, ***Johnson v. Johnson***, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *7 (Tenn. Ct. App. April 2, 2009), and "we accord substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses." ***Reed***, 2009 WL 3295123, at *2.

Trial Exhibit 4 is comprised of Ms. Pace's income tax returns for 2006 and 2007. In 2006, Ms. Pace reported total income of $26,150.00; in 2007, her reported income was $9,775.00. In calculating child support, the trial court imputed income to Ms. Pace in the amount $14.00 per hour at 38 hours per week or $2,305.34 per month.

The record indicates that, at the time of the hearing, Ms. Pace worked three days per week as a secretary for a small company. In addition, Ms. Pace has an associate's degree and a work history that included restaurant management. Although Mr. Pace asserts that Ms. Pace is voluntarily underemployed due to her "decision to forgo more lucrative employment opportunities in an effort to avoid employer drug testing so that she could continue her illegal use of marijuana," the record does not support such a conclusion. Despite Mr. Pace's allegations that Ms. Pace has foregone more lucrative employment opportunities, there is no proof in the record to support this statement. In short, there is no indication that Ms. Pace has turned down employment. Rather, it appears that, given the child's age and the fact that she has been his primary care giver, Ms. Pace has balanced her parental obligations with a truncated work week. From the totality of the circumstances, and especially in light of her tax returns, we cannot conclude that the trial court abused its discretion in imputing income of $2,305.34 per month to Ms. Pace.

### Credit for mortgage payments

---

support for that child in the future;
(VII) Any additional factors deemed relevant to the particular circumstances of the case.

Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2.)(iii).

As set out in full context above, Paragraph 3.1 of the parenting plan provides that, "in the event that either party should request an adjustment to father's obligation to pay child support as provided herein, that the parties shall request that the father be given consideration and credited for the $1,000.00 per month debt obligation that he has assumed and paid so that wife and child's home shall be free from encumbrance." In applying this provision, the trial court declined to grant Mr. Pace the full credit of $1,000.00 per month. Rather, the trial court awarded only $100.00 credit against Mr. Pace's child support obligation. Mr. Pace contends that the trial court erred in only granting him a $100.00 credit per month and in applying a $1000.00 per month credit since his first child support payment through the date Ms. Pace filed her petition to modify.

After reviewing the record, this Court finds that the trial court abused its discretion in providing Mr. Pace with a credit towards his child support for the amount he paid on Ms. Pace's mortgage. As set out above, the parties Marital Dissolution Agreement unequivocally states that Mr. Pace would pay the remaining balance on Ms. Pace's mortgage on her home, "in consideration of [Ms. Pace] deeding to [Mr. Pace] her equity" in the marital home. It is abundantly clear that Mr. Pace paid the entire amount owed on Ms. Pace's home as part of the parties property division agreement. In regards to child support, parents cannot bargain away a child's right to support. *Berryhill v. Rhodes*, 21 S.W.3d 188, 191 (Tenn. 2000). In exchange for paying the balance due on Ms. Pace's mortgage, Mr. Pace received Ms. Pace's equity in the marital home and according to the parenting plan was also to receive some form of child support credit in the event one of the parties sought modification of the child support. "We believe this arrangement constituted an impermissible 'bargaining away' of the [child's] right to support . . . ." *State ex rel. Flatt v. Flatt*, No. W2007-01376-COA-R3-CV, 2008 WL 794521, at *7 (Tenn. Ct. App. March 27, 2008).

This Court addressed a similar situation in *Corbett v. Corbett,* No. 03A01-9601-CH-00008, 1996 WL 480741 (Tenn. Ct. App. August 26, 1996). In *Corbett*, we held that the trial court cannot consider a payment made by the Husband directly to the mortgage holder as child support. *Id.* at *6; *see also State ex rel. Buckner v. Buckner,* No. E2000-00959-COA-R3-CV, 2000 WL 1207196 (Tenn. Ct. App. August 24, 2000)(holding that mortgage payments could not substitute for child support); and *McDowell v. McDowell*, 586 S.W.2d 110, 112 (Tenn. 1979)(holding that it was improper to make an award of child support by ordering that a parent will assume a bank debt of the custodial parent). In part, this Court reasoned that to do so, would result in a double benefit to the husband. *Id.* The *Corbett* court found that if husband received a credit for child support by paying the mortgage, he would receive both a credit for the child support and the benefit of increasing the equity on the home, which he would recoup when the property was sold. *Id.* In this case, Mr. Pace received Ms. Pace's share of the equity in the marital home in exchange for paying the

13

balance due on the mortgage on Ms. Pace's separate home. If we were to hold that Mr. Pace was entitled to a credit on his child support, he would receive both the child support credit, and the benefit of receiving Ms. Pace's equity in the marital home. As in **Corbett,** this Court cannot enforce such an agreement.

Accordingly, Mr. Pace is not entitled to a credit towards his child support for the mortgage payments on Ms. Pace's home. Mr. Pace paid the mortgage as part of the parties agreement on property division. We are cognizant of the fact that Mr. Pace was unrepresented at the time he entered into this agreement and that the agreement was drafted by Ms. Pace's attorney. However, the Marital Dissolution Agreement clearly provides that each party "has had the opportunity to obtain the advice of legal counsel as to their rights relating to the aforementioned pending litigation and the ramifications involved therewith, and that both parties understand the contractual nature of this agreement, when approved by the Court." Unfortunately, we are unable to find that Mr. Pace is entitled to any credit or other relief for paying Ms. Pace's mortgage. On remand, the trial court shall recalculate child support without providing for any form of a credit for the mortgage paid by Mr. Pace on Ms. Pace's home.

Mr. Pace's income

On appeal, Mr. Pace contends that the trial court erred in relying solely upon his 2007 tax return in determining his gross income for purposes of child support. The proof in this case indicates that Mr. Pace has primarily been self-employed as an automobile broker at various dealerships. According to his tax returns, Mr. Pace earned $201,036.00 in 2005, and $241,360.00 in 2006, while working as a partial owner of Global Motor Sports. However, in May 2006, Mr. Pace sold his interest in Global Motor Sports and invested the monies in the purchase of real estate. In 2007, although no longer working for Global Motor Sports, Mr. Pace earned $242,278.00, which he testified came from the sale of his investment property and the sale of his residence. In 2008, Mr. Pace testified that he began working as an independent automobile broker for Dixie Motors. Although his 2008 tax return was not included in the record, Mr. Pace testified that his income had decreased significantly in 2008 as a result of the downturn in the economy. Specifically, Mr. Pace testified that he grossed approximately $32,750.00 in 2008. At trial, Mr. Pace did not provide any proof other than his own testimony to support his contention that his income for 2008 was $32,750.00. Despite this testimony, the trial court set Mr. Pace's support obligation based upon his 2007 income.

At the hearing on Mr. Pace's motion to alter or amend the judgment, his attorney attempted to introduce new evidence to include Mr. Pace's 2008 tax return. The court refused this request and denied the motion to alter or amend. In denying the motion, the trial

14

court specifically stated that it did not find Mr. Pace's testimony regarding his 2008 income credible.

It is well settled that, in order to sustain a motion to alter or amend the judgment pursuant to Tenn. R. Civ. P. 59.04, the moving party must show that the new evidence sought to be introduced was not known prior to or during the trial and that it could not have been known through the exercise of reasonable diligence. *Woodall v. Woodall*, No. W2007-01880-COA-R3-CV, 2008 WL 3861989, at *3 (Tenn. Ct. App. Aug. 20, 2008). Here, the hearing took place on January 9, 2009, some three months prior to the April 15th deadline for filing federal income taxes, and almost three weeks before the January 31st deadline for employers to mail W-2 and 1099 forms. However, as Mr. Pace testified he had in his possession at the time of trial, other documents, i.e. a paystub showing year-to-date earnings, that supported his contention that his 2008 income was significantly lower than his 2007 income. Mr. Pace failed to take advantage of his opportunity at trial to present such evidence. Further, Mr. Pace never requested a continuance or to leave the proof open to provide the trial court with such evidence. Consequently, we do not find that the trial court abused its discretion in declining to consider the newly submitted evidence.

We also are unable to hold that the trial court abused its discretion in finding that Mr. Pace had an income of $242,278.00 a year, as represented by his 2007 tax return. The only proof as to Mr. Pace's income before the trial court was his 2005, 2006, and 2007 tax returns, as well as his unsupported testimony that his 2008 income was only $32,750.00. We concede that documentary proof is not necessary in order to calculate Mr. Pace's gross income. *See McDaniel v. McDaniel,* No. W2007-01587-COA-R3-CV, 2008 WL 5263605, at *7 (Tenn. Ct. App. Dec. 18, 2008). However, the trial court made an explicit finding that it did not believe Mr. Pace's testimony regarding his 2008 income. This court will not overturn a trial court's credibility determination absent clear and convincing proof to the contrary. *Heffington v. Heffington,* No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010). Finding no other proof in the record as to Mr. Pace's 2008 income, this Court finds that the trial court did not abuse its discretion in using Mr. Pace's 2007 income to calculate child support. This finding, however, does not prohibit Mr. Pace from petitioning the trial court, in the future, to modify child support based upon a showing of a significant variance between his current obligation and that set by the guidelines, due to a change in his income. Tenn. Code Ann. § 36-5-101(g); *Kaplan v. Bugalla*, 188 S .W.3d 632, 636 (Tenn. 2006).

In sum, we find that the trial court did not abuse its discretion in determining Mr. Pace's and Mrs. Pace's income for the purposes of child support. However, the trial court did abuse its discretion in providing Mr. Pace with a "credit" for the amount he paid towards Ms. Pace's mortgage. Accordingly, we vacate the trial court's determination of the amount

15

of child support to be paid by Mr. Pace. On remand, the trial court, using the incomes previously determined, shall set child support in accordance with the Tennessee Child Support Guidelines. In setting child support, the trial court shall calculate the child support owed to include the reinstatement of Mr. Pace's one week summer visitation and the additional one overnight visit per week.

## Attorney's Fees

Tenn Code Ann. § 36-5-103(c) provides that:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This statute gives courts the power to award "reasonable attorney fees ...." The award of attorneys' fees is within the trial court's discretion. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). Unless it "affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining," the trial court's exercise of discretion will not be reversed on appeal. *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999) (citations omitted). Having concluded that the trial court abused its discretion in modifying Mr. Pace's parenting time, in failing to grant Mr. Pace one additional overnight visit per week, and in awarding him a credit towards his child support, we vacate the trial court's award of attorney fees. On remand this trial court should reconsider the issue of attorney fees in light of this Opinion.

## Conclusion

For the foregoing reasons, this Court reverses the order of the trial court modifying Mr. Pace's parenting time, and vacates the determination of the child support to be paid by Mr. Pace. We affirm the trial court's determination on both Mr. Pace's and Ms. Pace's income. On remand, the trial court shall reinstate Mr. Pace's one week of summer vacation and provide for one overnight visit during the week. The trial court shall set child support in accordance with the Tennessee Child Support Guidelines, and without providing Mr. Pace

16

a credit for the mortgage payment.  Also, we vacate the trial court's award of attorney's fees to Ms. Pace. On remand, the trial court shall reconsider the issue of attorney fees and determine the amount, if any, each party is entitled to.  Costs of this appeal are assessed one-half  against Appellant, Ward Redden Pace, and his surety, and one half against Appellee Gina Scarlett Ferrari Pace, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE