IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 8, 2010

## IN THE MATTER OF ZACHARY G.G.

**Direct Appeal from the Juvenile Court for Lewis County**

**No. J-01-008, 97-8-101-C     Billy W. Townsend, Judge**

_____

**No. M2010-00095-COA-R3-JV - Filed September 8, 2010**

_____

This is an appeal from the trial court's denial of Father/Appellant's petition to change the
primary residential parent or in the alternative to increase his parenting time. Because Father
did not demonstrate that a material change of circumstances has occurred, we affirm the
decision of the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,
W.S., and DAVID R. FARMER, J., joined.

Melanie Totty Cagle, Centerville, Tennessee, for the appellant, Don G.

J. Jason Whatley, Sr., Columbia, Tennessee, for the appellee, Brandy E.

## MEMORANDUM OPINION[1]

The Petitioner/Appellant, Don G. ("Father") and the Respondent/Appellee, Brandy
E. ("Mother") are the parents of Zachary G.G., the minor child at issue in this case, who was

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse
or modify the actions of the trial court by memorandum opinion when a formal opinion
would have no precedential value. When a case is decided by memorandum opinion it shall
be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited
or relied on for any reason in any unrelated case.

born December 20, 1996.[2]  This case began on July 29, 2008, when Father filed his petition requesting that the trial court modify its prior order by naming him the primary residential parent or in the alternative increasing his parenting time.[3]  The previous order, which Father sought to modify, is not contained in the record before this Court.  It appears from the record

---

[2]The parents have never been married to one another.

[3]We note that Father submitted his brief and appeal using the terms of "custody" and "visitation." As recently explained by this Court,

> These terms, while not entirely obsolete, are outmoded when considering a determination of parental responsibility under the parenting plan statute, Tennessee Code Annotated section 36-6-401 et seq., which was adopted in part to change the language of child custody decisions. See Janet Leach Richards, *Richards on Tennessee Family Law*, § 8-2(e) (3d ed. 2008) (footnotes omitted). Judge Don. R. Ash, one of the leading proponents of reform, explained the need to recast the terminology of these decisions: "The archaic terms 'custody' and 'visitation' convey ownership over the child and imply that one party is merely a visitor in the home. These terms should be replaced with more user-friendly words." Judge Don R. Ash, *Bridge Over Trouble Water: Changing the Custody Law in Tennessee*, 27 U. Mem. L. Rev. 769, 801 (2007) (footnote omitted). The parenting plan statute did just that, replacing the traditional concepts of joint legal and physical custody with a new concept: the residential parenting schedule. 19A W. Walton Garrett, *Tennessee Practice Series: Tennessee Divorce, Alimony and Child Custody* § 26:3, at 78 (2d rev. ed. 2007). As a result, traditional terms such as custody, visitation, custodial parent, and noncustodial parent have given way to new terms, e.g., "residential schedule, temporary and permanent parenting plans, primary residential parent, alternate residential parent, and parenting responsibilities." Richards, supra, at § 8-2(e) (footnotes omitted). Because this change was intended to inspire parties to move beyond the win-lose mentality present in previous disputes over parental responsibility, see *id*., we find it appropriate to re-frame [Father's] argument in these terms. We note, however, that the change of terminology does not necessarily undermine the reasoning of previous opinions deciding custody and visitation disputes where the same concerns - supporting parent-child relationships, providing a mechanism for decision-making, allocating time with the child, promoting the child's best interests - predominated our review.
>
> *In re Emma E.*, No. M2008-02212-COA-R3-JV, 2010 WL 565630 at n.2 (Tenn. Ct. App. Feb. 17, 2010)

We also note that remnants of the "old" terminology remains in the Code as demonstrated by the use of the term "custody" in Tenn. Code Ann. § 36-6-101(a)(2)(B).

that the previous order was entered approximately four years prior to this action, sometime in 2003 or 2004.

Mother filed an answer on September 5, 2008. In her answer, Mother asserted that there had not been a material change of circumstances since the entry of the prior order.

A hearing was held on April 2, 2009. At this hearing, both parents testified, along with the child, the child's step-father, the child's counselor and the child's assistant principal. The child's counselor, Nunie Colmore ("Ms. Colmore") testified that she had seen the child during three different time periods in his life. She testified that she first saw the child when he was about four or five years old, following the death of his brother. She testified that she next saw the child in 2003 regarding some "adjustment stuff, behavior stuff coming up" at that time. Most recently, she saw the child beginning in September 2008, following the filing of this petition, when he began to have behavior issues at school. Ms. Colmore testified that in her opinion, the child was a "good kid," but needed structure and a firm authority figure as he likes to push limits. Also, Ms. Colmore testified that the child feels that Mother has a lot of rules and structure, while his time with Father is less structured. Ms. Colmore also told the trial court that she had spoken with the child about the modification proceedings, and the child was aware of the upcoming court date when they spoke.

The assistant principal at the child's middle school, Robert Plunk ("Mr. Plunk"), testified regarding his experience with the child's behavior problems and his dealings with both parents. Mr. Plunk told the court that he had known the child since fall 2008 and that the behavior issues were new issues that did not begin until late September or early October 2008. Mr. Plunk testified that most of the child's school behavior problems related to disruptive behavior. Mr. Plunk described the child as a good kid who needs structure. He informed the trial court that during the present school year, the child had received ten days of in school suspension and three days of out of school suspension. When the child was on the verge of receiving out of school suspension, Mr. Plunk met with both parents, the child, and some of the child's teachers. He explained that he called the meeting because the child's grades were good, and he was concerned about the effect that out of school suspension would have on the child's grades. Subsequent to the meeting, the child did receive out of school suspension. However, Mr. Plunk testified that since the meeting the child's behavior has improved. When asked about the child's grades, Mr. Plunk said the child was doing fairly well and that the classes where his grades were lower were low structure classes, one of which the regular teacher had been out of the classroom for two months and substitutes had been rotating in and out of the classroom. In describing his interactions with and opinions of the child's parents, Mr. Plunk testified that Father had a more subtle discipline approach and that Mother had a more stern discipline style. Mr. Plunk also testified that he had several conversations with the child regarding the problems he was having at school. Mr. Plunk

testified that he asked the child what was "going on with [his] behavior" to which the child expressed concerns about "things that were going on" and the possibility that he may go live with his Father. Mr. Plunk then testified that he asked the child whether that was the reason for his behavior and all the child would say was "I don't know."

The trial court then heard from the child, who was twelve years old at the time. The child told the trial court that his grades went down this year, but they were coming back up. He explained that his grades went down because he was not doing his homework. He told the trial court that he was having problems at school because he "likes attention." He also testified that both Mother and Father help him with school projects when he has them and that Father checks his school agenda when he gets home from school. Later, the child said that Mother also checks his school agenda. The child also told the trial court that he decided not to play baseball this season because he was afraid he "would get switched" (regarding custody) and would not finish the season. The child testified that five children, including himself, live at Mother's house. This includes his fourteen year old step-sister, seven year old brother, six year old sister, and fourteen month old baby brother. He testified that he shared a room at Mother's house with his seven year old brother. He explained that he and his older step-sister have a "regular brother-sister" relationship, some days are good and some are bad. Regarding his step-father, the child told the trial court that he does not like his step-father and that his step-father often cusses and yells at him. The child explained that he has more "one-on-one time" with Father. He told the trial court that Mother does not help him with his homework, but later explained that he lies to her and tells her he does not have any homework. The child expressed a preference to reside with Father explaining that it would not be as "loud" or "hectic," there would not be as many kids, and he would get more "one-on-one time." Also, the child testified that he speaks with Father daily on the phone. According to the child, his behavior problems started when Mother divorced her previous husband.

The trial court also heard from Father. Father admitted during his testimony that he was in recovery from alcohol and cocaine addiction. Father explained that he goes to "NA" meetings once a week and has been clean for four years. He provided the trial court photos of the child's bedroom at his house. As far as things that have changed since 2004, Father testified that for two years he only spoke with the child a few times a week, but that for the past two years he has spoken to the child almost daily; and that there have been problems with clothes being sent with the child when he comes to visit. Other than these two issues, Father did not testify to any changes since 2004.

Mother also testified. She asserted that there had been no significant changes since 2003 or 2004 when the parties were last in court. She admitted that since 2004 she has divorced and remarried and that in 2004 there were three kids in her home and now there are

five. She admitted that she uses corporal punishment, but testified that she did so before the entry of the prior custody order. Mother testified that her home has five bedrooms. Regarding the child's behavior problems, Mother told the trial court that the issues did not begin until after Father filed his petition. Mother explained that she had to ground the child to get his grades back up, and that they were coming back up. Mother also provided the trial court with examples when Father did not enforce discipline on the child, such as taking him to Chucky Cheese when he was grounded. Regarding his step-father, Mother testified that the child got along with his step-father and that the child never complained to her about his step-father.

Finally, the child's step-father testified. He stated that he had a "normal relationship" with the child. He admitted using foul language when speaking to the child, but explained that he did not "cuss at" the child. Step-father testified that until issues with the petition to modify arose, the child did not have behavior issues other than "normal teenage stuff." Step-father admitted to using cocaine in the past. In fact, Step-father stated that he had used cocaine with Father, but Step-Father testified that he had been clean for about four years. Step-father also testified that the child gets one-on-one time with Mother such as when the Mother takes the child out to eat and shopping.

Following the conclusion of the proof, the trial court announced its ruling from the bench. The trial court stated that it found that there had been a number of changes since the previous custody order, some positive and some "detracting." However, the trial court stated that it did not find that there had been a "substantial change in circumstances." The parties, along with the trial court, then discussed modifying visitation time by agreement.

Prior to the entry of an order reflecting the trial court's decision, Father filed a Motion to Reconsider and Alter or Amend the Judgment. In this motion, Father asserted that the trial court found a material change of circumstances but not a "substantial and material change of circumstances." Therefore, Father submitted that the trial court applied an incorrect standard in deciding this matter.

On June 8, 2009, an order was entered reflecting the trial court's April 2, 2009 ruling.[4] As stated in this order, the trial court "found that [Father] had not met his burden regarding the necessary showing of a material change of circumstances and ruled that the case be

---

[4]We note that there was a significant delay between the hearings, where the trial court announced its order and in the entry of both the order denying Father's petition and the order denying Father's motion to reconsider and alter or amend. The reason for these delays is not explained in the record. We would remind the parties that matters pertaining to children are of the upmost importance and every effort should be made to reach a conclusion in these matters in a timely fashion.

dismissed accordingly." The trial court noted in this order, that upon request of Father's counsel, he urged the parties to work together to expand visitation. Unfortunately, as provided in the order, the parties were unable to reach an agreement on expanded visitation.

On June 19, 2009, the trial court heard arguments on Father's Motion to Reconsider and Alter or Amend.[5] By order entered November 12, 2009, the trial court denied Father's motion.

Father filed a notice of appeal on December 2, 2009. He filed an amended notice of appeal on December 3, 2009. On appeal, Father raises three issues for our review:

1. Did the trial court err by failing to apply the correct standard as set forth in Tenn. Code Ann. § 36-6-101(a)(2)(B) to determine whether a material change of circumstances existed?

2. Did the trial court err by determining that changes both positive and detracting had occurred in the case, but failing to find that there had been a material change of [circumstances]?

3. Did the trial court err by not engaging in a best interest analysis to determine which parent should have custody of the parties' minor child?

Because this case was tried by the court sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. See Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. See *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. See *Whitaker*, 957 S.W.2d at 837; see also *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

---

[5]The record does not contain a transcript of this hearing.

It is well settled that "[a] custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made[.]" *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952)); *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); *Long v. Long*, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield*, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)); see also *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C); see also *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C); see also *Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). "We recognize that the circumstances of children and their parents inevitably change-children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody." *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." *Id.* (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." *Cosner*, 2008 WL 3892024 at *4 (citing *Kendrick*, 90 S.W.3d at 570); see also *Cranston*, 106 S.W.3d at 644; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002). "Custody decisions are not intended and should not be designed to reward parents for prior virtuous conduct, nor to punish them for their human frailties or past missteps." *Cosner*, 2008 WL 3892024 at *4 (citing *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006)).

We note that the determination of whether a "material change of circumstances" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C); see also *Pippin v. Pippin*, 277 S.W.3d 398, 406-07(Tenn. Ct. App. 2008) (citing *Massey-Holt v. Holt*, 255 S.W.3d 603 (Tenn. Ct.

App. 2007)). [6] As previously stated by this Court, "a 'change in circumstance' with regard to the parenting schedule is a distinct concept from a 'change in circumstance' with regard to the identity of the primary residential parent." *Massey-Holt*, 255 S.W.3d at 607. Subsection (a)(2)(C) establishes a lower threshold for modification of a residential parenting schedule. *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2, n.3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tenn. Code Ann. § 36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances")).

If the petitioner makes a prima facie case of a material change in circumstances, then the court must determine whether a change in custody or visitation is in the best interest of the child. *In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors,

---

[6]In pertinent part, Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C) provides:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.
>
> *          *          *
>
> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

including those set forth at Tenn. Code Ann. § 36-6-106(a) to make an initial custody determination, and those set forth at Tenn. Code Ann. § 36-6-404(b) to fashion a residential schedule. ***Id.***

Father first asserts that the trial court erred by applying an incorrect standard in determining whether a material change of circumstances had occurred. As Father points out in support of his contention, in ruling from the bench, the trial court found that there had not been a "*substantial* change of circumstances" (emphasis added). However, in its June 8, 2009 order, the trial court specifically stated, "that [Father] had not met his burden regarding the necessary showing of a *material* change of circumstances and ruled that the case be dismissed accordingly" (emphasis added). It is well settled that a trial court speaks through its orders. ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1997). Further, contrary to Father's argument, there is no indication in the record that the trial court applied any standard other than "material change of circumstances" or that the trial court required a showing of harm. Consequently, we find this contention to be without merit.

Next, Father submits that the trial court erred in finding that there had not been a material change of circumstances. After reviewing the record in its entirety, we find that the evidence does not preponderate against the trial court's finding that there had not been a material change of circumstances. Father, as the parent attempting to modify the existing parenting plan, must prove that a material change in circumstances has occurred. See ***Taylor v. McKinnie***, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008). We recognize that Father was requesting that the trial court change the primary residential parent or in the alternative modify the residential parenting schedule. As discussed above, these requests require the application of different standards to determine whether a "material change of circumstances" has occurred. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). However, even considering the lower threshold, the standard required to modify the parenting schedule, Father did not meet his burden of proof.

As previously noted, we have not been provided with the prior order which Father sought to modify nor does the record contain the date which the prior order was entered. Other than the approximate date of sometime in 2003 or 2004 as testified to by the parties, we cannot determine when the order was entered. Consequently, we are unable to determine the exact point in time from which the trial court should be determining whether a material change of circumstances has occurred.

Moreover, the record contains little, if any, proof regarding the circumstances of the parties at the time the order Father sought to modify was entered. We recognize, as did the trial court, that there have been some changes since the prior order. For example, Mother has

divorced and remarried, the number of children living in Mother's home has increased from three to five, and Father has also married and had another child on the way at the time of trial. However, as this Court has previously stated, "[w]e recognize that the circumstances of children and their parents inevitably change – children grow older, their needs change, one or both parties remarry." ***Cosner v. Cosner***, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). But not all changes amount to a material change of circumstances. Even considering a petition to modify the parenting schedule, which is a lower threshold, the main consideration is whether there have been significant changes which effect the well being of the child. Based upon the record before us, we find that the evidence does not preponderate against the trial court's finding that there has not been a material change of circumstances.

We recognize Father's concerns with the child's behavior issues at school and his concern with the child's grades. However, we find that the behavior issues that arose during the Fall of 2008 do not amount to a material change of circumstances. Initially, we note that there is no proof in the record of the child's grades at the time that the prior order was entered. Consequently, we cannot determine if there has been any change, let alone a material change. Further, as testified to by Mr. Plunk, the child's behavior has improved at school. Accordingly, it appears that these behavior issues lasted for only a few months. Likewise, while the record demonstrates that the child's grades did briefly fall during the 2008-2009 school year, as testified to by the child and reflected in the report cards entered into evidence, the child's grades are improving.

Consequently, we affirm the trial court's finding that Father did not carry his burden of proof in demonstrating that there had been a material change of circumstances. Because Father did not demonstrate a material change of circumstances, the trial court was not required to engage in a best interest analysis to determine if the primary residential parent or the parenting schedule should be modified.

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are assessed to the Appellant, Don G., and his surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE