IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 31, 2011

## IN RE:  JOZIE C.C.

**Direct Appeal from the Juvenile Court for Madison County**
**No. 49-44, 450      Christy Little, Judge**

**No. W2010-02070-COA-R3-JV - Filed September 28, 2011**

This is a modification of child custody case. Mother and Father entered into a consent order naming Father primary residential parent and giving Mother visitation. Mother petitioned the juvenile court to change custody.  The court denied the petition to change custody, but modified Mother's visitation. Mother appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J, delivered the opinion of the Court, in which ALAN E. HIGHERS, P. J., W. S., and DAVID R. FARMER, J., joined.

John Philip Parson, Cookeville, Tennessee, for the appellant, Karen C.

Lisa A. Houston, Jackson, Tennessee, for the appellee, John A.

Joseph T. Howell, Jackson, Tennessee, Guardian Ad Litem.

## MEMORANDUM OPINION[1]

### I. Background

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On September 3, 2004, Plaintiff/Appellant Karen C. ("Mother") and Defendant/Appellee John A. ("Father") had a child together, Jozie C.C.[2] Although never married, Mother and Father sought a voluntary paternity test shortly after the child was born, whereby Father was found to be the child's biological parent. Prior to November 30, 2006, there is no indication in the record of any dispute between the parties regarding parentage of the child, custody, or visitation. On November 30, 2006, Mother signed a consent order voluntarily naming Father primary residential parent. The parties maintained joint legal custody over the child and Mother agreed to have visitation with the child one weeknight and one weekend night from 6:00pm to 10:00am per week. The consent order further stated that the parties were not to have overnight guests of the opposite sex while the child is in the parent's care and custody and that school vacation decisions were reserved to be decided when the child entered school.[3]

On February 25, 2010, Mother, acting *pro se*, filled out a form complaint provided by the Madison County Juvenile Court. While the actual purpose of the form was to petition to have a child declared abandoned, dependent, or neglected, Mother stated on the form that she sought "to be designated as the primary custodial parent" because she had been spending considerably more time with the child than was outlined by the consent order. Thus, the juvenile court treated the petition as a petition to change custody. Father never filed an answer to the petition; instead, he filed interrogatories, requests for admissions, a request for production of documents, and a motion for a psychological evaluation.

After several continuances and a motion to compel discovery filed by Father's attorney, the juvenile court held a hearing on Mother's petition on July 13, 2010. During the rather unorthodox hearing, the juvenile court judge allowed Mother to call four witnesses for her side, who generally stated that the child was often with Mother and that child and Mother had a good relationship. However, due to the late time that the hearing commenced, the juvenile court judge decided to call all of Mother's subpoenaed witnesses into the courtroom and poll them regarding whether they intended to testify in favor of Mother or Father. A number of the witnesses that Mother subpoenaed indicated that they intended to testify in

---

[2] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identity.

[3] The parties did not enter into a parenting plan in this case. Parenting plans are required only in cases involving absolute divorce, legal separation, annulment, or suits for separate maintenance involving a minor child. *See* Tenn. Code Ann. §36-6-404. Further, juvenile courts are empowered to include parenting plans in any cases that involve their original jurisdiction, but are not required to do so. *See* Tenn. Code Ann. § 36-6-411 ("The juvenile court may incorporate any part of the parenting plan process in any matter that the court deems appropriate.").

favor of Father. The juvenile court then excused the witnesses, appointed a guardian *ad litem* for the child, and adjourned.

The juvenile court reconvened the hearing on August 6, 2010. Mother took the stand in support of her petition at this time. First she was questioned by the judge, then Father's attorney, then the guardian *ad litem*. During the testimony, Mother stated that she had custody of the child a minimum of every other day after the consent order was entered, except for a two-month period where Father kept the child from Mother entirely. Mother admitted, however, that since she executed the consent order, she had been arrested for shoplifting and accused of TennCare and food stamp fraud. Mother also admitted that her current husband, who she was in the process of divorcing, was a drug dealer and mean to the child during the marriage. Mother further acknowledged that she often took her child to visit a pawn shop, which was owned by Mother's friend, Tom Krasner , and that guns were sold at the shop. The court then allowed Father's attorney to re-cross Mother. After asking a few questions, and without giving Mother an opportunity for any kind of re-direct, Father's attorney moved the court to deny Mother's petition to change custody because she failed to meet her burden of proof.

The guardian *ad litem* then gave his recommendation that visitation be modified due to the fact that Father had moved to another county, making weeknight visits difficult. Accordingly, the court ordered that Father remain the primary residential parent, but that Mother's parenting time be changed to every other weekend from 6:00 pm on Friday to 6:00 pm on Sunday, with holidays to be worked out in the future.[4] The court also ordered that Mother: (1) not be allowed to take the child to the pawn shop or to have the child "around anyone of the opposite sex that [she is] not married to;" (2) produce records from a mental health treatment facility where she had previously been treated; (3) not be given visitation the weekend after the hearing, but that visitation should start the following weekend. During the proceedings, the juvenile court judge did not place any other restrictions on Mother's visitation or rights.

An order was entered reflecting the juvenile court's order on September 13, 2010.[5]

---

[4] In her appeal, Mother does not take issue with the court's modification of parenting time.

[5] While the order prepared by Father's attorney generally reflects the court's order regarding custody and parenting time, it sets out various factual findings that the court did not specifically find, nor are they supported in the record. For example, the order states that "testimony and evidence from the child's school staff shows that Mother has been controversial in her working with the school;" however, no testimony was introduced by Father from any staff at the child's school. In addition, the order provides that Mother's parenting time will begin on Fridays at 5:00pm and end on Sundays at 5:00pm, rather than the 6:00 pm time

(continued...)

The order specifically states that Mother has not proven a material change in circumstances to support her petition, but that visitation shall be changed in the "best interests of the child." The order further states that "Mother . . . is not allowed to go to school unless the Father is there as well . . . and is not to take the child around Tom Krasner, including, but not limited to, at his pawn shop or the river."

Mother properly appealed to this Court.

## II. Issues Presented

Mother raises the following issues for review:

1. Whether the original consent order is invalid in contravention of Tennessee Code Annotated Section 36-2-201 *et. seq.*?
2. Whether there was a material change in circumstances to support Mother's petition to change custody?

Father, in the posture of Appellee, raises the following issue:

1. Whether Mother's appeal is devoid of merit and frivolous, warranting an award of attorney's fees to Father?

## III. Standard of Review

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). In applying the de novo standard, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody' and that 'the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010) (citing *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." *Hyde*, 2010 WL 4024905, at *3 (citing *Johnson*, 169 S.W.3d at 645).

## IV. Analysis

---

(...continued)
ordered by the court at the conclusion of the hearing.

Mother first argues that the consent order entered by the parties violates Tennessee Code Annotated Section 36-2-101 *et. seq.* We note that the cited law has been repealed and renumbered at Tennessee Code Annotated Section 36-2-311. Section 36-2-311 states that "[u]pon establishing parentage, the court shall make an order declaring the father of the child." The order should include the full names and addresses of the parents, social security numbers of the parties, other statistical information, and any determinations regarding custody and visitation of the child.[6]

Mother asserts that, because the consent order does not contain statistical and other information as required by the statute, it cannot bind her as to visitation and custody. However, Mother failed to raise this issue during the hearing in juvenile court. It is well established that an issue not raised in the trial court cannot be raised on appeal. *See Bank of Fayette County v. Woody*, No. W2010–01798–COA–R3–CV2011, WL 2572052, at *3 (Tenn. Ct. App. June 30, 2011) (citing *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) (stating that issues not raised in the trial court are waived on appeal)). Although we are cognizant of the fact that Mother was proceeding *pro se* in the trial court, "[*p*]*ro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere." *Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Hodges v. Attorney General*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000). Accordingly, we conclude that this issue is waived.

Mother next argues that she proved a material change in circumstances warranting a change of custody. It is well settled that "[a] custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield*

---

[6] Tenn. Code Ann. §36-2-311 states, in pertinent part:

Upon establishing parentage, the court shall make an order declaring the father of the child. This order shall include the following:

(1) Full names and residential and mailing addresses of the mother, father and child, if known;
(2) Dates of birth and social security numbers of the mother, father and the child, if known;
(3) Father's place of birth, if known;
(4) Home telephone number of the mother and the father, if known;
(5) Driver license numbers of mother and father, if known;
(6) Name, address and telephone number of mother and father's employers, if known;
(7) Availability of health insurance to cover the child, if known;
(8) Determination of the child's name on the child's birth certificate;
(9) Determination of the custody of the child pursuant to chapter 6 of this title;
(10) Determination of visitation or parental access pursuant to chapter 6 of this title;
(11)(A) Determination of child support pursuant to chapter 5 of this title. . . .

***v. Scofield***, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing ***Young v. Smith***, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952)); ***Steen v. Steen***, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); ***Solima v. Solima***, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); ***Long v. Long***, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." ***Scofield***, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)); *see also* ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. §36-6-101(a)(2)(B)-(C); *see also* ***Boyer v. Heimermann***, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. §36-6-101(a)(2)(B)-(C); *see also* ***Taylor v. McKinnie***, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002)). "We recognize that the circumstances of children and their parents inevitably change—children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody." ***Cosner v. Cosner***, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." ***Id.*** (citing ***Cranston v. Combs***, 106 S.W.3d 641, 644 (Tenn. 2003)). However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." ***Cosner***, 2008 WL 3892024 at *4 (citing ***Kendrick***, 90 S.W.3d at 570); *see also* ***Cranston***, 106 S.W.3d at 644; ***Blair v. Badenhope***, 77 S.W.3d 137, 150 (Tenn. 2002).

We note that the determination of whether a "material change of circumstances" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. §36-6-101(a)(2)(B)-(C); *see also* ***Pippin v. Pippin***, 277 S.W.3d 398, 406-07(Tenn. Ct. App. 2008) (citing ***Massey-Holt v. Holt***, 255 S.W.3d 603 (Tenn. Ct. App. 2007)).[7] As previously stated by this Court, "a 'change in circumstance' with regard to

---

[7] In pertinent part, Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C) provides:

(continued...)

the parenting schedule is a distinct concept from a 'change in circumstance' with regard to the identity of the primary residential parent." **Massey-Holt**, 255 S.W.3d at 607. Subsection (a)(2)(C) establishes a lower threshold for modification of a residential parenting schedule. **Scofield v. Scofield**, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing **Rose v. Lashlee**, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2, n.3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tenn. Code Ann. §36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances")).

If the petitioner makes a *prima facie* case of a material change in circumstances, then the court must determine whether a change in custody or visitation is in the best interest of the child. **In re J.C.S.**, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth at Tenn. Code Ann. §36-6-106(a) to make an initial custody determination, and those set forth at Tenn. Code Ann. §36-6-404(b) to fashion a residential schedule. **Id.**

---

[7](...continued)

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

> * * *

> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

During the hearing, Mother testified that, other than a short period where Father deprived her of parenting time, she had visitation with the child every other day since the consent order was executed, rather than the two days a week reflected in the consent order. According to Mother, this testimony was uncontradicted at trial and is sufficient to prove a material change in circumstances.

The trial court found no material change in circumstances, and we find nothing in the record to overturn that finding. We will only overturn a trial court's decision that there was not a material change of circumstance if the decision "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record" or "if the evidence preponderates against the finding that there has been a material change in circumstances." *Adams v. Adams*, No. W2008-00225-COA-R3-CV, 2009 WL 690697, at *11 (Tenn. Ct. App. March 17, 2009) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

Mother's only support for this allegation was her own testimony and a neighbor's testimony that the child is always seen with Mother. The evidence, in light of the entire record, supports the trial court's finding that these allegations, largely unsupported, did not demonstrate a material change in circumstances. *See Clark v. Arthur*, No. M2005-01719-COA-R3-CV, 2007 WL 1319264, at *5–6 (Tenn. Ct. App. May 4, 2007) (finding that mere allegations of abuse and interference with visitation, without any proof, were not sufficient to constitute a material change in circumstances). While we agree that portions of the September 13th, 2010 order entered by the trial court do not accurately reflect the evidence presented, we nevertheless conclude that Mother failed to meet her evidentiary burden to prove a material change in circumstances. Accordingly, the trial court properly maintained Father as primary residential parent.

Father finally argues that Mother's appeal is frivolous and that he should be awarded attorney's fees pursuant to Tennessee Code Annotated Section 27-1-122.[8] "Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of

---

[8] Tenn. Code Ann. §27-1-122 states:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). Although we have not decided the issues before us in Mother's favor, we are not persuaded that this appeal is frivolous or taken solely for delay. We, therefore, decline to award attorney's fees to Father.

## V. Conclusion

The judgment of the juvenile court is affirmed. Costs of this appeal are assessed to the Appellant Karen C., and her surety.

_____
J. STEVEN STAFFORD, JUDGE